AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

United States of America )
v. )
Zhenjun Wei ) Case No.
) 3:25-mj-1306-PDB
)
)
)

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 1, 2025__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1029(a)(3) | Fraud and Related Activity in Connection with Access Devices |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO Samuel Hackney/HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/7/2025

_____
Judge's signature

City and state: Jacksonville, FL

PATRICIA D. BARKSDALE-MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Samuel C. Hackney, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.  I am a Task Force Officer (TFO) with Homeland Security Investigations (HSI), an agency of the United States Department of Homeland Security (DHS). I am a duly sworn peace officer in the State of Florida. I have been employed with the Jacksonville Sheriff's Office for nine years and I am currently a Detective with the Organized Retail Crime Unit. I have been a TFO with HSI for approximately two years. I am familiar with organized criminal organizations, including transnational criminal organizations (TCOs) that profit from retail crime and fund criminal enterprises. I am familiar and have experience with criminal organizations and the communication and structures associated with the operations of those groups. I have received specialized training on retail gift card tampering detection, methods, and countermeasures.

2.  I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have received training in criminal investigation procedures and criminal law and have conducted and participated in numerous criminal investigations involving access device fraud, which fall under 18 U.SC. § 1029, among other sections.

3. The facts in this affidavit come from my personal observations, my training and experience, and information I obtained from other agents, law enforcement officers, and witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested criminal complaint and does not set forth all my knowledge about this matter.

4. I make this affidavit in support of an application for the issuance of a criminal complaint for Zhenjun WEI, for violations of 18 U.S.C. § 1029(a)(3) (access device fraud).

## GIFT CARD FRAUD SCHEMES AND METHODS

5. Pursuant to 18 U.S.C. § 1029(e)(1), the term access device means "any card, plate, code, account number, electronic serial number, mobile identification number . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." The term unauthorized access device means "any access device that is lost, stolen, expire, revoked, canceled, or obtained with intent to defraud." Based on my training and experience, I know that retail gift cards function as an access device because they are a card, code, or other means of accessing a consumer's ability to obtain goods or services based on the stored value associated with the gift card.

6. Based on my training and experience, I am familiar with gift card fraud schemes and methods. While perpetrators may use different methods, the schemes

typically have the same structure. The structure usually involves perpetrators first stealing gift cards from merchandise shelves. After stealing the cards, the perpetrators tamper with the gift cards by opening the packaging and removing any security tape attached—obtaining the bar code/CVV number/activation code and then resealing the card after replacing any security tape. Once the perpetrators have the bar code/CVV number/activation code, they are prepared to steal the monetary value programmed into the gift card when a future unsuspecting customer purchases the gift card from a retail merchant. The perpetrators may also modify the cards by placing new bar codes over the existing ones. From there, the perpetrators place the gift cards back on store merchandise shelves for unsuspecting customers to purchase.

7. For example, when a customer purchases and activates a tampered gift card, the perpetrator will monitor the tampered card numbers and receive an alert when the card is activated. Next, the perpetrator will redeem the money loaded on the tampered card by the customer. The money from the card is typically used to purchase merchandise or diverted to an account controlled by the perpetrators or affiliated criminal organization. The money diversions can be performed through simple gift card redemptions or uploaded to mobile wallets on smart phones. For example, the retail chain, Target, has a website and a smart phone application that allows customers to shop online for merchandise. On the Target App, users have the option to upload gift cards and other forms of payment. This is an example of a mobile wallet since the Target App allows a user to hold a balance or multiple gift cards. The perpetrators of schemes like this usually communicate and coordinate

with each other regarding these fraudulent activities, as well as recruit individuals to steal, tamper, and then place gift cards back on store shelves. Through my training and experience, I'm aware that some communication is through WeChat and QQ, which are Chinese peer-to-peer (P2P) instant messaging software programs.

8. From previous cases involving gift card tampering, suspects advised me during custodial interviews that they are paid a percentage of the face value of each card they steal and/or tamper. This fraudulent scheme originally consisted of suspects stealing gift cards in bulk from multiple stores and locations and shipping the stolen gift cards to criminally operated facilities in the United States for tampering. From there, boxes of tampered gift cards would be shipped to other suspects in the field to be placed back on store shelves in multiple regions and states.

9. I am aware that gift card companies, manufacturers, and retail establishments began combatting this fraudulent scheme by imbedding countermeasures into the gift cards themselves as security measures. For example, one countermeasure established is a protective concept known as "geofencing." Geofencing prohibits gift cards from being activated outside of regions they are designated – for example, if the perpetrators were to steal gift cards in Florida and ship them to California for the tampering process, geofencing would prevent the gift card from being activated after being placed on retail shelves in California. These countermeasures and protections have led to the increase in mobile tampering rather than the previous methods (shipping out of state) detailed above.

10. Mobile tampering involves stealing gift cards from stores in the same region, tampering with the cards locally, and placing those tampered cards back in the same stores. In previous cases involving perpetrators utilizing the mobile tampering methods, I have located scanners, tools, glues, heat presses, heat guns, razor blades, and other equipment related to defeating the security features in gift cards, inside the perpetrator's vehicles. I have also located stacks of recently stolen gift cards labeled by perpetrators with store numbers and the store's numerical address to ensure those cards are returned to the same store once they have been tampered.

## PROBABLE CAUSE

11. On September 9, 2024, I was contacted by a Principal for Target's Cyber Defense-Fraud & Abuse Team, whose role is to engage with law enforcement partners to combat organized retail crime both online and in physical stores, about three unknown Asian males who were placing tampered gift cards on the shelves in Target stores in the Middle District of Florida, and elsewhere. The principal explained that the suspects would steal unsold gift cards from the merchandise shelves and replace them with tampered gift cards. The principal also advised that the first recorded incident was in May 2023, at a Jacksonville Beach Target location.

12. One of the suspects, identified as Haijin QIN, was arrested by the Fairfax County Police Department in Virginia after placing tampered gift cards in a Northern Virginia Target Store on December 11, 2024.

13. On June 19, 2025, I was notified by Target investigators that one of the suspects identified as WEI, was back in Florida placing tampered gift cards in Target stores in Florida. Target investigators advised WEI was driving a 2021 Toyota 4Runner displaying California tag "9NXY308."

14. With the assistance of law enforcement intelligence databases and Target investigators, I located WEI and conducted mobile surveillance on July 1, 2025, in Palm Bay, Florida. Beginning around 8:30AM, the surveillance team and I observed WEI leaving his hotel located at 1206 Malabar Road SE, in Palm Bay Florida, and drive to the following eight Target Stores in the Middle District of Florida:

- Target Store T2547 located in Palm Bay Florida;
- Target Store T0689 located in Melbourne, Florida;
- Target Store T1934 located in Vierra, Florida;
- Target Store T1053 located in Merritt Island, Florida;
- Target Store T2269 located in Titusville, Florida;
- Target Store T1795 located in Port Orange, Florida;
- Target Store T0688 located in Daytona Beach, Florida; and
- Target Store T2364 located in Palm Coast, Florida (Arrested).

15. While surveilling WEI, I observed that he was consistent in his behavior and actions at all eight target stores, which was also captured on the Target Store's surveillance cameras. To summarize, WEI would drive his vehicle to a

secluded section of the Target parking lot. Next, he would enter the store and approach the gift card displays. WEI would then select gift cards and conceal them in his pockets before leaving the store without activating or paying at a register. Next, I observed as WEI would return to his vehicle where he would tamper with the cards and "swipe the cards" with a card reader attached to his laptop. After, WEI would then glue the gift cards back in their packaging and place the tampered cards back in his pocket. The entire tampering process varied from 30 minutes to an hour, depending on the number of cards he stole from the store. After tampering, WEI would exit his vehicle, enter the store, and place the tampered gift cards back on the display for unsuspecting customers. WEI would then leave the store, enter his vehicle, and drive to the next Target store.

16. On July 1, 2025, at approximately 5:50PM, I observed WEI drive his 2021 Toyota 4Runner to the Target Store located at 5100 State Rte. 100, Palm Coast, Florida, in the Middle District of Florida. I observed WEI park his vehicle in the Target parking lot and enter the store. I know that Target investigators observed WEI approach the gift card displays, conceal the cards in his pockets, and leave the store without activation or payment at the register. I then observed WEI reenter his vehicle where he remained for approximately one hour. I know that a Target investigator observed WEI retrieve a silver laptop in the rear seat of his vehicle and watched as WEI appeared to be swiping gift cards through a card reader. I also know that the Target investigator observed WEI return the laptop to the rear seats before he exited the vehicle. I then observed WEI exit the vehicle and walk towards

the Target store where he was encountered by HSI agents and arrested. While the agents searched WEI incident to arrest, they discovered 47 gift cards located in WEI's pockets. Upon examination, I observed pry marks on the bottom of the gift card packaging. From my training and experience, I know that these marks are inconsistent with the original manufacturing processes of gift cards. Upon further inspection, I noticed that an Apple gift card packaging was partially opened on the bottom. I carefully extracted the card, ensuring to maintain evidentiary integrity and immediately observed a hard glue dried on the face of the card. This glue was used to secure the card inside of its package. From my training and experience, I know that the hard glue is not consistent with materials used in Apple gift card manufacturing. Additionally, I observed that the last few digits of the access code underneath the safety seal were defaced. From my training and experience, I am aware that this method of defacing the access codes prevents actual customers from redeeming funds off the gift cards, allowing suspects "extra" time to steal funds.

## CONCLUSION

17. Based on the facts and observations contained in this Affidavit, I believe probable cause exists that WEI committed access device fraud on July 1, 2025, in the Middle District of Florida. Therefore, I respectfully request the issuance of a criminal complaint charging WEI for violations of 18 U.S.C. § 1029(a)(3).

Respectfully submitted,

Samuel Hackney
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to before me telephonically, on this 7th day of July, 2025, in Jacksonville, Florida.

PATRICIA D. BARKSDALE
UNITED STATES MAGISTRATE JUDGE